IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

NOV 18 2019

Clerk, U.S. Courts
District of Montana
Missoula Division

| | |
|---|---|
| DANNY LEE WARNER, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA; MONTANA DPHHS; FLATHEAD COUNTY; ELEVENTH JUDICIAL DISTRICT COURT; FLATHEAD COUNTY ATTORNEY; KALISPELL POLICE DEPARTMENT; FLATHEAD COUNTY SHERIFF; OFFICE OF THE STATE PUBLIC DEFENDER; FLATHEAD COUNTY DETENTION CENTER; FORENSIC MENTAL HEALTH FACILITY; FLATHEAD 911 EMERGENCY COMMUNICATIONS CENTER; SECURUS TECHNOLOGIES, INC.; TRAVIS AHNER; ROBERT ALLISON; WILLIAM MANAGHAN; ALISON HOWARD; NICK AEMISEGGER; STAN OTTOSEN; JORDAN MILLER; JASON PARCE; SEAN McRAE; RONALD CLACKER; JESSE ALLEN; DENNIS PETERSON; CHARLES BARLOW; VIRGINIA HILL; JILL BUCK; and KRISTINA NEU,<br><br>Defendants. | CV 19-103-M-DLC-KLD<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Danny Warner has filed a Motion to Proceed in Forma Pauperis

(Doc. 1) and proposed Complaint (Doc. 2) pursuant to 42 U.S.C. § 1983 raising

numerous allegations regarding his incarceration at the Flathead County Detention

1

Center (FCDC) and the Forensic Mental Health Facility (FMHF) of Montana State Hospital. The motion to proceed in forma pauperis will be granted and Defendants Hill, Buck, and Neu will be required to respond to Mr. Warner's allegations regarding his conditions of confinement at the FMHF. All other claims and Defendants will be recommended for dismissal.

## I. MOTION TO PROCEED IN FORMA PAUPERIS

Mr. Warner's motion to proceed in forma pauperis (Doc. 1) is sufficient to make the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted. 28 U.S.C. § 1915(a). Pursuant to 28 U.S.C. § 1915(b)(1), Mr. Warner must pay the statutory $350.00 filing fee. The Court will waive the initial partial filing fee, but Mr. Warner will be required to make monthly payments of 20 percent of the preceding month's income credited to his institutional account. The percentage is set by statute and cannot be altered. 28 U.S.C. § 1915(b)(2). Mr. Warner must make these monthly filing-fee payments simultaneously with the payments required in any other cases he has filed. *Id.* By separate order, the Court will direct the facility where Mr. Warner is held to forward payments from Mr. Warner's account to the Clerk of Court each time the account balance exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

2

## II. STATEMENT OF THE CASE

### A. Parties

Mr. Warner is currently incarcerated at Montana State Prison but at all times relevant to his Complaint, he was held at the FCDF and/or FMHF.  He names the following Defendants:  State of Montana, Montana DPHHS, Flathead County, Eleventh Judicial District Court, Flathead County Attorney, Kalispell Police Department, Flathead County Sheriff, Office of the State Public Defender, FCDC, FMHF, Flathead 911 Emergency Communications Center, Securus Technologies, Inc., Travis Ahner, Robert Allison, William Managhan, Alison Howard, Nick Aemisegger, Stan Ottosen, Jordan Miller, Jason Parce, Sean McRae, Ronald Clacker, Jesse Allen, Dennis Peterson, Charles Barlow, Virginia Hill, Jill Buck, and Kristina Neu.  (Amended Complaint, Doc. 5 at 2-3.)

### B. Factual Allegations

Mr. Warner was arrested on November 23, 2016, charged with robbery, and detained at the FCDC.  On April 19, 2017, he was committed to the Montana State Hospital and transferred to the FMHF on May 16, 2017.  He remained at FMHF until July 3, 2017 at which time he was returned to the FCDC.  He was convicted of robbery and was sentenced on November 21, 2017.  On November 22, 2017, he was transferred to the custody of the Montana Department of Corrections.

(Complaint, Doc. 2 at 5.)

### 1.  Defendants DPHHS, FMHF, Hill, Buck, and Neu

Mr. Warner alleges he suffers from several mental health disorders and that in 2012 he was diagnosed with mixed personality disorder with paranoid, antisocial borderline, and schizotypal features and a mood disorder.  Despite this diagnosis he claims Defendant Hill stated in July 2017 that Mr. Warner did not suffer from a mental disease or defect.  He claims this intentional misdiagnosis was done with deliberate indifference as part of a conspiracy with Defendants DPHHS, FMHF, Eleventh District Court, Flathead County Attorney, Allison, and Ahner to deprive him of his constitutional rights.

He also contends he was housed in too restrictive conditions at FMHF.  He alleges he was denied recreation outside for all but a few days, was refused food on several occasions, was denied religious items and was not allowed to practice his religion, was assaulted twice by staff, and was denied medical attention and treatment.  He claims that on June 12, 2017, Defendant Hill removed him from all his pain medications as a means of punishing him.

Mr. Warner alleges he was subject to punishment for incidental infractions such as crumpling up an old newspaper and having a fourth 8-oz cup of water in a single mealtime.  He asserts that argumentative and resistive behaviors are

4

common manifestations of mental illness, but such behaviors are simply punished rather than treated by Defendants DPHHS, FMHF, Hill, and Buck.

Mr. Warner contends that on June 8, 2017, Defendant Buck ordered a show of aggression against him. He was placed in his cell without cause and without due process and approximately 15 staff members crowded around his cell door to intimidate him. Mr. Warner claims this was done by Defendants FMHF, Buck, and Hill in retaliation for his complaints and grievances. He claims Defendant Buck ordered his door be opened and that staff assault him which was done by several staff hitting him and wrestling him to the ground to be placed in restraints. He asserts the assault was wanton and unnecessary and was solely for the purpose of punishing and retaliating against him. He claims he suffered a long gash across his back and a dislocated shoulder with torn tendon and ligaments after the assault.

He argues the physical pat downs after every meal were unreasonable searches and an exaggerated response to a perceived security need. After the second time Mr. Warner was allegedly molested during a pat down, he decided to not allow anyone to physically touch him. On June 25, 2017, Defendant Neu told Mr. Warner that if he did not consent to the pat downs he would not eat and would be denied all meals until he consented to being touched again. He consented so he could go to the dining hall but then refused to be touched on the way out. He

claims he was again assaulted causing injuries to his hip and back.

He claims that on June 30, 2017, Defendants DPHHS, FMHF, Hill and Buck illegally and unconstitutionally sent privileged and protected information via fax. He believes this information was sent to the Eleventh Judicial District Court. He claims they released a 26-page confidential report which was only to be given to him. He claims this report was released to Defendants Eleventh Judicial District Court, FCA, FCDC, Allison and Ahner but never provided to Mr. Warner. (Complaint, Doc. 2 at 5-11.)

### 2. Defendants FCDC and STI

Mr. Warner alleges that between July 5, 2017 and October 25, 2017, Defendant Securus Technologies, Inc., under contract with the Flathead County Detention Facility, recorded 202 private, privileged phone calls between Mr. Warner and his attorneys and his investigator. He claims these recordings were made available to Defendants Flathead County Attorney, Kalispell Police Department, and Ahner. (Complaint, Doc. 2 at 11.)

### 3. Defendants District Court and Judge Allison

Mr. Warner contends Defendants Eleventh Judicial District Court and Allison conspired with Defendants Ahner and Ottosen to deprive Mr. Warner of his right to compulsory process while simultaneously issuing a search warrant

without probable cause.  He claims his shoes and jacket were illegally seized by Defendant Ottosen at the behest of Defendant Ahner.  He claims Defendants Eleventh Judicial District Court and Allison further conspired with Defendants OPD and Aemisegger to violate his constitutional right to equal protection and discriminated against him in violation of the Civil Rights and Americans with Disabilities Act (ADA).

He claims Defendant Allison ordered that he be taken to the state hospital for an evaluation against his will and required Mr. Warner's standby counsel to sign all pleadings before being filed.  He claims the District Court, through the Clerk of Court, refused to file a number of pleadings and did so as part of a conspiracy with Defendants Allison, Ahner, and Managhan.  (Complaint, Doc. 2 at 12.)

### 4. Defendants FCA, Ahner, and Howard

Mr. Warner alleges that on August 16, 2017, Defendant Ahner downloaded and listened to three private privileged phone calls between Mr. Warner and the investigator for his criminal case.  He also claims that on September 11, 2017, Defendant Ahner downloaded and listened to two 15-minute phone calls between Mr. Warner and his disabilities rights attorney.  He asserts that on October 4, 2017, Defendant Howard entered into a conspiracy with Defendant Ahner by listening to

7

a privileged phone call between Mr. Warner and his investigator.

He also alleges that Defendant Miller (the robbery victim) lied under oath as part of his conspiracy with Defendant Ahner testifying that Mr. Warner had called him from the jail. He claims that Defendant Ahner filed false charges of tampering with a witness on September 26, 2017, fourteen days before Mr. Warner's criminal trial. Defendant Ahner dismissed the charges on October 18, 2017 six days after the conclusion of Mr. Warner's criminal trial.

On November 21, 2017, Mr. Warner claims that as he was being sentenced for a robbery conviction, Defendants Ahner and Ottosen conspired to illegally seize property purported to belong to Mr. Warner. He claims Defendant Ottosen went to a different judge to obtain a warrant in bad faith because Mr. Warner had already been convicted and there was no probable cause for this warrant. He claims Defendants Ahner and Ottosen were well aware that the shoes and coats could not be considered evidence as there was no chain of custody. He claims this was done out of spite to deprive Mr. Warner of his property because Defendant Ottosen had lied under oath by testifying that Mr. Warner had released his shoes and coat intentionally and Defendant Ahner used this false testimony in his closing argument to imply that Mr. Warner did so to avoid being identified.

He claims Defendant Ahner and Parce colluded and conspired to deprive

8

Mr. Warner of his constitutional rights by withholding evidence intentionally, willingly, and wantonly.  (Complaint, Doc. 2 at 13-17.)

### 5. Defendants KPD, Parce, Allen, Clacker, McRae, Peterson, and Ottosen

Mr. Warner alleges Defendants KPD, Parce, Allen, Clacker, McRae, Peterson, and Ottosen entered into a conspiracy to deprive Mr. Warner of his statutory and constitutional rights through blatant police misconduct and attempting to cover up their acts and omissions.  He claims they lied under oath and conspired to ensure Mr. Warner was identified as the robber on November 23, 2016.  He claims Defendant Peterson told Defendant Barlow (a witness in the criminal case) that Mr. Warner was the robber with absolutely no evidence whatsoever.  Mr. Warner alleges Defendant Barlow provided a photo of Mr. Warner to the police that he alleged was from earlier that night (which Mr. Warner contends it was not).  He claims Defendant Parce took this photo and without verifying it with any victim cleared at least four individuals who met the description of the robber but were not the person in the photo.  Only later did he take the photo to the victim; however, instead of showing it to him in a photo array and asking if it was the robber, Defendant Parce showed Defendant Miller the photo by itself and told him it was the person who robbed him.

Mr. Warner alleges Defendant Allen detained an individual who fit the

9

description of the robber but then released him and did not submit a report of the incident.

Mr. Warner was arrested at 11:04 p.m. on November 23, 2016 and at the time he had a backpack that disappeared after he was escorted from the bar. He claims the backpack contained numerous electronics including his personal computer and items which cannot be replaced, and Defendants left the backpack in the bar after they arrested Mr. Warner.

Mr. Warner alleges Defendant Parce knowingly lied in an affidavit and falsified evidence and perjured himself at trial. (Complaint, Doc. 2 at 17-18.)

### 6. Defendants OPD, Aemisegger, and Managhan

Mr. Warner alleges that between November 23, 2016 and January 25, 2017 Defendant Managhan intentionally ignored Mr. Warner's requests to obtain exculpatory evidence of his alibi for the robbery and as a result the evidence was subsequently lost. He claims Defendants OPD, Aemisegger, and Managhan conspired to cover up Defendant Managhan's malpractice. He claims Defendant Managhan divulged attorney client privileged information to Defendant Ahner. (Complaint, Doc. 2 at 18-19.)

## III. SCREENING STANDARD

Mr. Warner is a prisoner proceeding in forma pauperis so the Court must

review his Complaint under 28 U.S.C. § 1915 and § 1915A.  Sections 1915A(b)
and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis
and/or by a prisoner against a governmental defendant before it is served if it is
frivolous or malicious, fails to state a claim upon which relief may be granted, or
seeks monetary relief from a defendant who is immune from such relief.  A
complaint is frivolous if it "lacks an arguable basis either in law or in fact."
*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it was filed
with the intention or desire to harm another."  *Andrews v. King*, 398 F.3d 1113,
1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be
granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint
"that states a claim for relief must contain . . . a short and plain statement of the
claim showing that the [plaintiff] is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  That
is, a complaint must "contain sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (quotations omitted).  A complaint's allegations must cross "the line from
conceivable to plausible."  *Iqbal*, 556 U.S. at 680.

11

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]" — "that the pleader is entitled to relief." *Id.* (*citing* Fed.R.Civ.P. 8(a)(2)). "A document filed *pro se* is 'to be liberally construed,' and

12

'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## IV.  SCREENING ANALYSIS

### A.  *Younger* and *Heck* Doctrines

Mr. Warner states:

> While the nexus between all of the defendants and plaintiffs deprivation of civil rights is his criminal case, nothing in this complaint should be construed as an attempt at addressing any element of plaintiff's prosecution as that belongs in another venue altogether; this complaint and the claims raised herein are exclusively civil, to remedy wrongs, injuries, and deprivations that occurred beyond the criminal case and for which there is no adequate means of alleviation through appeal, post-conviction, or habeas.

(Complaint, Doc. 2 at 19, ¶ 116.)  The Court disagrees.

On February 27, 2019, Mr. Warner filed his Opening Brief in support of his direct appeal of his robbery conviction and raised the following issues (among others):  speedy trial, suggestive witness identifications, disclosure and use of state

13

hospital's psychiatric reports, claims that prosecutors listened to privileged calls during trial, and prosecutorial misconduct during closing arguments. (Opening Brief of Appellant, *State v. Warner*, No. DA 18-0046, filed February 27, 2019.) These allegations, therefore, cannot be separated from his criminal action.

Challenges to ongoing state criminal proceedings are barred by the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). The doctrine is based on the strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff. *Younger*, 401 U.S. at 45; *see also Gooding v. Hooper*, 394 F.2d 146 (9th Cir. 1968). *Younger* directs federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. *Martinez v. Newport Beach City*, 125 F.3d 777, 781 (9th Cir. 1997) *overruled on other grounds Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001) (citing *Younger*, 401 U.S. at 40-41). Abstention also applies to federal civil actions requesting money damages where the ongoing state action is a criminal prosecution. *Martinez*, 125 F.3d at 781 (*citing Mann v. Jett*, 781 F.2d 1448 (9th Cir. 1986)). Federal courts may raise the issue of *Younger* abstention sua sponte. *Martinez*, 125 F.3d at 781 n.3 (*citing Bellotti v. Baird*, 428 U.S. 132, 143-44 n.10 (1976)); *see also San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1103 n. 5 (9th Cir. 1998)(noting

14

that the district and appellate courts can raise the issue sua sponte).

In civil cases in the Ninth Circuit, *Younger* abstention is required where a state court proceeding (1) is ongoing; (2) is a quasi-criminal enforcement action or involves a state's interest in enforcing the orders and judgments of its courts; (3) implicates important state interests; (4) provides an adequate opportunity to raise the federal questions; and (5) would be enjoined by the federal court action or would have the practical effect of doing so. *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018).

All the elements of *Younger* abstention are established in this case. First, as set forth above, Mr. Warner has a pending appeal in front of the Montana Supreme Court regarding his criminal conviction for robbery. *State v. Warner*, DA 18-0046 (filed Montana Supreme Court on January 22, 2018). Thus, there are ongoing state proceedings and the first requirement has been met. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 3–4, 10 (1987) (finding that the court should have abstained under *Younger* while the state proceeding was pending on appeal).

Secondly, the state appeal is a criminal enforcement action that involves the state's interest in enforcing the orders and judgment of the state district court. Third, these proceedings revolve around important state interests to enforce local and state laws. *See Younger*, 401 U.S. at 43-44. The State of Montana, through its

15

state and local prosecuting offices, has a significant state interest in prosecuting conduct that constitutes a criminal offense under the laws of Montana. This Court may not interfere with those interests when the prosecutorial process is ongoing.

Fourth, Mr. Warner has an adequate opportunity in the state court to raise federal questions and concerns that affect his constitutional rights. Mr. Warner has opportunities under Montana law to raise the alleged violations of his constitutional rights relative to his prosecution and he has done so as demonstrated by his Appellate brief.

Fifth, this federal action would enjoin or have the practical effect of enjoining the state court proceeding. Federal actions have the "practical effect" of enjoining a state proceeding generally when the complaint seeks injunctive or declaratory relief that would effectively stop the state court proceeding. *See, e.g., San Jose Silicon Valley Chamber of Commerce Political Action Comm.*, 546 F.3d 1087, 1095–96 (9th Cir. 2008) (finding *Younger* applicable where relief sought in federal court was a permanent injunction precluding defendants from enforcing a statute that was the subject of an ongoing state-initiated proceeding); *Burlington Ins. Co. v. Panacorp, Inc.*, 758 F. Supp. 2d 1121, 1136 (D. Haw. 2010) (declaratory relief action would have practical effect of enjoining state court proceeding because declaratory relief was sought on identical claims as ongoing

16

state court proceeding).  Claims for monetary damages generally do not have the practical effect of enjoining a state court proceeding, except where the allegations in the federal complaint "go to the heart" of the issues in the state court proceeding, such that a decision on the merits would have the same practical effect as an injunction.  *See Gilbertson v. Albright*, 381 F.3d 965, 982 (9th Cir. 2004).

Here Mr. Warner seeks a declaration that the acts and omissions of Defendants set forth in his Complaint violated his rights under the Constitution and the laws of the United States.  (Complaint, Doc. 2 at 26, ¶ 191.)  Mr. Warner raised the following claims in his direct appeal to the Montana Supreme Court:  (1) whether the district court erred when it summarily denied Mr. Warner's speedy trial motions; (2) whether the district court erred by allowing an unnecessarily suggestive in-court identification; (3) whether the district court erred in refusing specific eyewitness identification instructions; (4) whether the disclosure and use of the state hospital's psychiatric reports on Mr. Warner require remand for resentencing before a different judge; (5) whether the district court's unsupported findings that prosecutors could not and did not listen to Mr. Warner's privileged calls during trial are clearly erroneous; (6) whether the district court erred when it refused to allow a limited waiver of attorney-client privilege; (7) whether the district court erred when it refused to provide jurors the defense audio exhibits; (8)

17

whether there was prosecutorial misconduct during closing argument. (Opening Brief of Appellant, *State v. Warner*, No. DA 18-0046, filed February 27, 2019.)

Any decision by this Court regarding whether Mr. Warner's federal constitutional rights were violated regarding his claims of speedy trial violations, suggestive witness identifications, the use of state hospital's psychiatric reports, that prosecutors listened to privileged calls during trial, and prosecutorial misconduct during closing arguments would have the practical effect of enjoining the state court process because Mr. Warner is seeking declaratory relief on the very claims raised in his state appeal. As such, *Younger* mandates that this Court abstain from adjudicating these claims.

Generally, where monetary damages are sought, the federal court should stay the matter under *Younger* rather than dismiss those claims until after the state court proceedings are no longer pending. *Gilbertson*, 381 F.3d at 981-982; *see also Los Altos El Granada Investors v. City of Capitola*, 583 F.3d 674, 689-690 (9th Cir. 2009). However, in *Gilbertson*, the Ninth Circuit stated, "We do not foreclose the possibility of a unique case where damages are sought and *Younger* principles apply but dismissal is indicated for some other reason. A damages claim that is plainly frivolous, for example, might not save an action." *Id.* at 982 n.18. As set forth below, even if these claims are not barred by *Younger*, they will be

18

barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994) unless

Mr. Warner succeeds in his direct appeal.

To the extent that any of Mr. Warner's claims regarding his criminal

proceedings are not barred by the *Younger* doctrine, they are barred by *Heck v.*

*Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held

that if a judgment in favor of a plaintiff in a civil rights action would necessarily

imply the invalidity of his conviction or sentence, the complaint must be dismissed

unless the plaintiff can demonstrate that the conviction or sentence has been

invalidated. *Id.* at 486-87; *see also Smith v. City of Hemet*, 394 F.3d 689, 695 (9th

Cir. 2005) (en banc) ("*Heck* says that 'if a criminal conviction arising out of the

same facts stands and is fundamentally inconsistent with the unlawful behavior for

which section 1983 damages are sought, the 1983 action must be dismissed.'"

(citation omitted)). Thus, the "relevant question" in a § 1983 suit is whether

success would "'necessarily imply' or 'demonstrate' the invalidity of the earlier

conviction or sentence." *Smith*, 394 F.3d at 695 (*quoting Heck*, 512 U.S. at 487).

Therefore, Mr. Warner's claims which necessarily imply the invalidity of his

conviction must be dismissed without prejudice. This includes the following

claims: Paragraphs 121 (conspiracy to wrongfully prosecute and convict); 122,

164 (conspiracy to violate privacy, effective assistance of counsel, due process);

19

123, 163 (conspiracy to violate right to compulsory process), 125 (freedom from false accusations and perjury); 126 (right to effective assistance of counsel); 128 (conspiracy to deprive Warner of right to free from false accusations, and police misconduct, and false evidence, withheld evidence, perjury); 130, 141 (intentional misdiagnosis); 131, 167 (effective assistance, speedy trial); 135-136, 144, 150-151, 154, 188 (recording of and listening to privileged phone calls); 139, 143, 166, 181, 189 (forced evaluation); 147-148, 152, 156, 187 (disclosure of privileged information); 160 (deprivation of liberty without due process); 163, 165 (deprivation of right to represent self and access to courts).

"Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, see 512 U.S. at 486–487, will the statute of limitations begin to run" on these claims. *McDonough v. Smith*, 139 S.Ct. 2149, 2158 (2019). Should Mr. Warner succeed in his criminal appeal he may pursue these claims but unless and until that conviction has been reversed, any claims which imply the invalidity of his criminal conviction should be dismissed without prejudice subject to refiling should Mr. Warner succeed on his criminal appeal.

**B. Defendants**

In addition to the dismissal of the majority of Mr. Warner's claims based

upon the *Younger/Heck* doctrines, the Court finds that a number of the Defendants identified by Mr. Warner are entitled to immunity and/or are not proper defendants in this action.

### 1. Defendants State of Montana, Montana DPHHS, Forensic Mental Health Facility, Eleventh Judicial District Court, and Office of the State Public Defender

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI; *see also Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). The United States Supreme Court has interpreted this amendment to mean that absent waiver, neither a State nor an agency of the State acting under its control may "be subject to suit in federal court." *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The State of Montana has waived immunity only for tort claims brought in state court. Mont. Code Ann. § 2-9-101 et seq. Hence any claim against the State of Montana or any agency of the State (such as Montana DPHHS, Eleventh Judicial District Court, and/or Office of the State Public Defender) for monetary damages cannot be brought in federal court.

One exception to the general prohibition of the Eleventh Amendment is that it does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacity. *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-106 (1984); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997) cert. denied, 118 S.Ct. 2340 (1998).

Further, while the Eleventh Amendment does not bar claims for prospective injunctive relief against a state official who is sued in their official capacity, any claims for prospective injunctive relief claim would be moot because Mr. Warner is no longer held at FCDC or FMHF and he has not demonstrated that there is a reasonable expectation that he will be transferred back to the FMHF. *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam); *see also Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007). Accordingly, Defendants State of Montana, Montana DPHHS, Eleventh Judicial District Court, and the Office of the State Public Defender will be recommended for dismissal.

### 2. Defendants Kalispell Police Department, Flathead County Detention Center, Flathead 911 Emergency Communications Center

These defendants are not legal entities, like individuals or corporations, that

are capable of being sued in a 42 U.S.C. § 1983 action.  Pursuant to Federal Rule

of Civil Procedure 17(b)(3), the capacity to be sued is determined by the law of the

state in which the court is located.  *See* Mont. Code Ann. § 7-1-4124(2) (1979)

(providing that municipality has power to "sue and be sued"); Mont. Code Ann. §§

7-32-4101, et. seq; 7-32-4201, et seq. (not addressing municipal police force or

municipal detention centers power to sue or be sued).

Section 1983 applies to the actions of "persons" acting under color of state

law.  Municipalities are subject to suit under § 1983.  *Monell v. New York City*

*Dept. of Social Services*, 436 U.S. 658, 690 (1978); *Owen v. City of Independence,*

*Mo.*, 445 U.S. 622, 637 (1980) (holding § 1983 is expansive and does not expressly

incorporate common law immunities).  But "to bring an appropriate action

challenging the actions, policies or customs of a local governmental unit, a plaintiff

must name the county or city itself as a party to the action, and not the particular

municipal department or facility where the alleged violation occurred." *Bradford*

*v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008) (holding Seattle

Police Department is not a legal entity capable of being sued under § 1983) (*citing*

*Nolan v. Snohomish County*, 59 Wash. App. 876, 883 (1990)).

These Defendants will be recommended for dismissal.

23

### 3. Prosecutorial Immunity—Defendants Travis Ahner & Alison Howard

Mr. Warner also brings claims against Travis Ahner and Alison Howard, Deputy County Attorneys for Flathead County. State prosecutors are absolutely immune when performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). That is, "when performing the traditional functions of an advocate." *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997).

"Absolute immunity applies when 'initiating a prosecution' and 'presenting the State's case,' and during 'professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . . after a decision to seek an indictment has been made.'" *Garmon v. County of Los Angeles*, 828 F.3d 837, 843 (9th Cir. 2016) (internal citations omitted).

Defendants Ahner and Howard are entitled to absolute immunity for actions taken in the course of presenting the state's case such as examining witnesses, presenting evidence, and arguing before the court. They are also entitled to absolute immunity with regard to their preparation for presenting the criminal case at trial.

Mr. Warner alleges Defendants Ahner and Howard listened to private calls with his attorneys and investigators, filed false charges, conspired to illegally seize

24

his property, used false testimony in closing arguments and withheld evidence. (Complaint, Doc. 2 at 13-17.)  As set forth above, the majority of claims raised against Defendants Ahner and Howard are barred by *Heck*.  To the extent they are not, the Court finds that these Defendants are entitled to prosecutorial immunity and should be dismissed.  *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (absolute immunity for prosecuting charges maliciously); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 679 (9th Cir. 1984) (absolute immunity for evaluating "whether the prosecutor needs [certain] evidence to prosecute," since that decision "goes to the heart of the advocate's role"); *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (absolute immunity for prosecutor's exercise of discretion in regulating flow of information to defense, including for "deliberate withholding of exculpatory information") (*quoting Imbler*, 424 U.S. at 431–32).

The only possible allegation against Defendant Ahner that may not be barred by *Heck* is Mr. Warner's allegation that Mr. Ahner conspired with Defendant Ottosen to illegally seize property purported to belong to Mr. Warner.  The warrant for this property was signed on November 21, 2017, the same day that Mr. Warner was sentenced for the robbery conviction.  Accordingly, it is feasible that Mr. Ahner's actions in seeking this warrant are not covered by prosecutorial immunity.

25

Nevertheless, as set forth below, Mr. Warner has failed to state a claim regarding the November 21, 2017 warrant.  Therefore, Defendants Ahner and Howard should be dismissed.

### 4. Judicial Immunity—Robert Allison

Mr. Warner names state district court judge Robert Allison as a Defendant in this matter.  To the extent that any claims raised against Judge Allison are not barred by *Younger/Heck*, Judge Allison is entitled to judicial immunity.  Judges are absolutely immune from damage for liability for acts which are judicial in nature. *Forrester v. White*, 484 U.S. 219, 227 229 (1988); *see also Stump v. Sparkman*, 435 U.S. 349, 355 57 (1978); *Pierson v. Ray*, 386 U.S. 547, 553-55 (1967). Judicial immunity applies to actions brought under 42 U.S.C. § 1983 for acts committed within the scope of judicial duties, "even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly." *Stump*, 435 U.S. at 356.  "[A] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."  *Id.* at 356 37; *see also Forrester*, 484 U.S. at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"); *Mireless v. Waco*, 502 U.S. 9, 12 (1991).

Mr. Warner challenges Judge Allison's actions and rulings in his criminal proceedings. These are all actions taken within Judge Allison's judicial duties for which Judge Allison is absolutely immune. As such, Mr. Warner's s claims against Judge Allison must be dismissed. *See Chavez v. Robinson*, 817 F.3d 1162, 1167 68 (9th Cir. 2016) (noting that 28 U.S.C. § 1915(e)(2)(B)(iii) requires the court to dismiss an action "at any time" if it "seeks monetary relief from a defendant who is immune from such relief.").

### 5. Criminal Defense Attorneys—William Managhan, Nick Aemisegger

Mr. Warner also brings claims against William Managhan and Nick Aemisegger, attorneys with the Montana Office of Public Defender. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In *Polk County v. Dodson*, 454 U.S. 312 (1981), the United States Supreme Court held that public defenders do not act "under color of state law" when performing traditional lawyer duties. *Miranda v. Clark County*, 319 F.3d 465, 468 (9th Cir. 2003) (en banc). Consequently, Mr. Warner cannot state a federal claim against Defendants Managhan and Aemisegger because they are not state actors.

### 6. Jordan Miller

Mr. Warner has also named Jordan Miller as a Defendant. Mr. Miller was the alleged victim in the robbery of which Mr. Warner was convicted. (Complaint, Doc. 2 at 5.) Mr. Warner alleges Mr. Miller lied under oath as part of his conspiracy with Defendant Ahner. It is well established that a witness who offers testimony at trial, including perjured testimony, is subject to "absolute immunity from liability for civil damages under 42 U.S.C. § 1983." *Franklin v. Terr*, 201 F.3d 1098, 1099 (9th Cir. 2000). "Absolute witness immunity" also "extends to preparatory activities 'inextricably tied' to testimony, such as conspiracies to testify falsely." *Lisker v. City of L.A.*, 780 F.3d 1237, 1241 (9th Cir. 2015). As such, Defendant Miller is entitled to absolute immunity based upon his testimony at Mr. Warner's criminal trial.

### C. Remaining Claims

Based upon the above analysis, the Court finds that the only remaining claims are: (1) Mr. Warner's ADA claims; (2) Mr. Warner's HIPAA claims; (3) Mr. Warner's claims regarding the November 21, 2017 search warrant for his coat and shoes; (4) Mr. Warner's claims regarding his backpack; (5) Mr. Warner's failure to train claims against Flathead County; and (6) Mr. Warner's conditions of confinement claims including searches, excessive force, and denial of medical care

against Defendants Hill, Buck, and Neu.

### 1. Claims Under the Americans with Disabilities Act ("ADA")

In Claim Three, Mr. Warner alleges he was deprived of "rights" under the ADA. (Complaint, Doc. 2 at 23, ¶¶ 137-141.) Two paragraphs under Mr. Warner's ADA claim, (¶ 139—forced evaluation & ¶ 141—intentional misdiagnosis) have already been addressed as being barred by the *Younger/Heck* doctrines.

In Paragraph 138 of the Complaint, Mr. Warner claims that the conditions of confinement at FMHF violated the ADA and Defendants State of Montana, DPHHS, FMHF, Buck and Hill are responsible for depriving him of his rights under the ADA. (Complaint, Doc. 2 at ¶ 138.)[1] The ADA was enacted with the purpose, in part, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. §

_____

[1] In Paragraph 140 of the Complaint under Claim Three: ADA, Mr. Warner alleges that Defendants State of Montana, DPHHS, FMHF, Hill and Buck failed to provide care and treatment in the least restrictive setting and conditions that are most supportive of personal liberties pursuant to MCA § 53-21-142(2). (Complaint, Doc. 2 at ¶ 140.) This claim is construed not as an ADA claim but rather as a state law claim under MCA § 53-21-142(2). Out of an abundance of caution, Defendants Hill and Buck will be required to respond to that claim. To the extent, this paragraph can be construed as an allegation under the ADA, it fails to state a claim for the reasons set forth below.

12101(b)(1).  Pursuant to Title II, a "qualified individual with a disability" cannot,

"by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity."  42 U.S.C. § 12132.  Title II applies to

prisoners in state facilities.  *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 209-10

(1998); *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001).

In order to state a claim of disability discrimination under Title II of the

ADA plaintiff must allege four elements:

> 1) he is an individual with a disability; 2) he is otherwise qualified to
> participate or receive the benefit of some public entity's services,
> programs, or activities; 3) he was either excluded from participation in
> or denied the benefits of the public entity's services . . . or was
> otherwise discriminated against by the public entity; and 4) such
> exclusion, denial . . . or discrimination was by reason of his disability.

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (internal

quotations and citations omitted); *see also Townsend v. Quasim*, 328 F.3d 511, 516

(9th Cir. 2003); *Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir. 1996).

> A disability discrimination claim may be brought either on the theory
> that defendant failed to make reasonable accommodations or on a
> more conventional disparate treatment theory, or both.  This is
> because the ADA not only protects against disparate treatment, it also
> creates an affirmative duty in some circumstances to provide special,
> preferred treatment, or "reasonable accommodation."

*Dunlap v. Association of Bay Area Governments*, 996 F.Supp. 962, 965 (N.D.Cal.

1998).[2] Although Title II of the ADA uses the term "reasonable modification," rather than "reasonable accommodation," these terms create identical standards. *See Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 n. 26 (9th Cir. 1999).

Speaking specifically to claims under Title II of the ADA, the Ninth Circuit has made clear that "Congress intended to prohibit two different phenomena. Congress intended to prohibit outright discrimination, as well as those forms of discrimination which deny disabled persons public services disproportionately due to their disability." *Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir. 1996).

Mr. Warner has failed to state any plausible claim under the ADA. First, he has not established that he is an individual with a disability. His conclusory statement that he "is a person with a disability" (Complaint, Doc. 2 at 6, ¶ 38) is insufficient. He sets forth no facts or allegations that he was excluded from participation in or denied the benefits of a public entity's services because of a disability. In fact, he alleges he was provided access to the services of the Montana State Hospital even though he did not want to be there.

Mr. Warner's conclusory allegations are insufficient to state an ADA claim and will be recommended for dismissal.

---

[2]*Dunlap*, 996 F.Supp. 962, considers specifically Title III of the ADA, but *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004), cites *Dunlap* in the context of a Title II claim.

31

### 2.   Claims Under the Health Insurance Portability and Accountability Act ("HIPAA")

Mr. Warner alleges Defendants released his protected health information in violation of the Health Information Portability and Accountability Act. To the extent this claim is not otherwise barred by *Younger/Heck*, "HIPAA itself provides no private right of action." *Garmon v. County of Los Angeles*, 828 F.3d 837 (9th Cir. 2016). All claims arising under HIPAA will be recommended for dismissal.

### 3.   Coat & Shoes

In paragraph 155 of the Complaint, Mr. Warner alleges Defendant Ahner and Ottosen illegally seized his coat and shoes, obtained a search warrant in bad faith without probable cause, and thus deprived him of his Fourth Amendment protections. (Complaint, Doc. 2 at 22, ¶ 155.) To prove a § 1983 claim for a Fourth Amendment violation stemming from false or omitted information in a warrant affidavit, a plaintiff must show not only that the officer acted deliberately or with reckless disregard, but also that the false or omitted statements were material to a magistrate's finding of probable cause. *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004); *see also Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). To establish materiality, the plaintiff must demonstrate that "the magistrate would not have issued the warrant with false information redacted, or omitted information restored." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126

32

(9th Cir. 1997).

Mr. Warner attached the November 21, 2017 search warrant to his Complaint. Judge Eddy signed the warrant entitled "IN RE THE SEARCH OF Clothing held in safe keeping at Flathead County Detention Center located at 800 South Main Street, Kalispell, Montana 59901 for inmate Danny Warner. . .." The Warrant was directed to Detective Ottosen, Police Officer; Kalispell Police Department and indicated:

> Proof has been made this 21st day of November, 2017, by Detective Ottosen, of the Kalispell Police Department, State of Montana, before me that he has reasonable cause to believe that evidence of the Robbery MCA 45-5-401 is located at the above listed address and that evidence is as listed:  . . .

(Doc. 2-1 at 33.)

Mr. Warner's only contention regarding this warrant is that since he had already been convicted, there was no probable cause for the warrant. This is insufficient to state a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. Mr. Warner's factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct." *Id.* Given that Mr. Warner was being sentenced on November 21, 2017 it is equally plausible that the warrant was issued to maintain custody of evidence clearly relevant to the robbery case. Just because Mr. Warner had already been convicted, does not disrupt the assertion

33

that his clothing was evidence of the crime of robbery. Mr. Warner has merely

alleged—but it has not "show[n]" — "that the pleader is entitled to relief." *Id.*

(*citing* Fed.R.Civ.P. 8(a)(2)). This claim should be dismissed.

### 4.   Backpack

Mr. Warner contends he was arrested at 11:04 p.m. on November 23, 2016

and at the time he had a backpack that disappeared after he was escorted from the

bar. He claims the backpack contained numerous electronics including his

personal computer and items which cannot be replaced, and Defendants left the

backpack in the bar after they arrested Mr. Warner. (Complaint, Doc. 2 at 18, ¶

106.) Mr. Warner then alleges that Defendants KPD, Parce, Allen, Clacker, and

Peterson illegally seized his backpack and the contents thereof in violation of the

Fourth Amendment and the due process clause. (Complaint, Doc. 2 at 23, ¶¶ 158,

161.)

Mr. Warner does not plausibly state a Fourth Amendment claim in that he

alleges his backpack was left at the bar and not actually seized by Defendants.

"The Fourteenth Amendment's Due Process Clause protects persons against

deprivations of life, liberty, or property; and those who seek to invoke its

procedural protection must establish that one of these interests is at stake."

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Wolff v. McDonnell*, 418 U.S. 539,

556 (1974). The availability of an adequate state post-deprivation remedy precludes relief, however, because such a remedy provides sufficient procedural due process. *See Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994); *Zinermon v. Burch*, 494 U.S. 113, 128-29 (1990) (where state cannot foresee and therefore provide meaningful hearing prior to deprivation, statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process). The Montana Tort Claims Act, Mont. Code Ann. §§ 2–9–101, et seq., provides an adequate post-deprivation remedy. *See, e.g.*, Mont. Code Ann. § 2–9–101(1) (2007). Accordingly, Mr. Warner cannot state a procedural due process claim and his claims regarding his lost backpack should be dismissed.

### 5.    Failure to Train—Flathead County

Mr. Warner alleges Flathead County is liable for failure to train its employees and failure to protect Mr. Warner. (Complaint, Doc. 2, at 24, ¶¶ 170-171.) A county is not liable under 42 U.S.C. § 1983, however, on a *respondeat superior* theory—that is, a county is not automatically liable just because it employs or contracts with a person or entity that allegedly violates a plaintiff's rights. *See, e.g., Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A *Monell* claim also requires an underlying constitutional violation. *See Lee v. City of L.A.*, 250 F.3d

35

668, 681–82 (9th Cir. 2001) (plaintiff must establish defendant's policy was "the

'moving force behind the constitutional violation[s]'" as element of Monell claim)

(original alteration).  With no surviving constitutional claim here, the County

should also be dismissed.

## 6.   FMHF Conditions

The Court presumes for purposes of this Order that Mr. Warner was a

pretrial detainee at all times relevant to his Complaint.  As such, his claims are

evaluated under the due process clause of the Fourteenth Amendment which

applies to pretrial detainees, rather than under the Eighth Amendment, which

applies to convicted prisoners' claims.  *Castro v. County of Los Angeles*, 833 F.3d

1060, 1067-68 (9th Cir. 2016) (discussing the differing constitutional standards

that apply to convicted inmates as opposed to pretrial detainees) (*citing Bell v.*

*Wolfish*, 441 U.S. 520, 535 (1979) (holding due process requires that a pretrial

detainee may not be punished prior to a lawful conviction)).

The Court has considered whether Mr. Warner's claims against Defendants

Hill, Buck, and Neu regarding the conditions of his confinement at FMHF are

frivolous, malicious, fails to state a claim, or seeks solely monetary relief from a

defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).  Dismissal of

the claims alleged in Paragraphs 140, 157, 172-179, 182-185 of the Complaint is

36

not appropriate at this time. These allegations "are sufficient to meet the low threshold for proceeding past the screening stage" and are not subject to sua sponte dismissal pursuant to 28 U.S.C. § 1915A(b)(1) or (2). *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). Defendants Hill, Buck, and Neu must respond to Paragraphs 140 157, 172-179, 182-185 of the Complaint. *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that plaintiff has a "reasonable opportunity to prevail on the merits," Defendant is required to respond).

Based upon the foregoing, the Court issues the following:

### ORDER

1. Mr. Warner's Motion to Proceed in Forma Pauperis (Doc. 1) is GRANTED. The Clerk shall edit the text of the docket entry for the Complaint (Doc. 2) to remove the word "LODGED." The Complaint is deemed filed on June 17, 2019.

2. Pursuant to Fed.R.Civ.P. 4(d), the Court requests Defendants Virginia

Hill, Jill Buck, and Kristina Neu waive service of summons of the Complaint by executing, or having counsel execute, the Waiver of Service of Summons. The Waiver must be returned to the Court within 30 days of the entry date of this Order. If Defendants Hill, Buck, and Neu choose to return the Waiver of Service of Summons, their answer or appropriate motion will be due within 60 days of the date of this Order pursuant to Fed.R.Civ.P. 12(a)(1)(B). *See also* 42 U.S.C. § 1997e(g)(2). Defendants Hill, Buck, and Neu must respond to Paragraphs 140 157, 172-179, 182-185 of the Complaint.

3. The Clerk of Court shall mail the following documents to Defendants Hill, Buck, and Neu at Montana State Hospital, 300 Garnet Way, Warm Springs, MT 59756:

* Complaint (Doc. 2);
* this Order;
* a Notice of Lawsuit & Request to Waive Service of Summons; and
* a Waiver of Service of Summons.

4. Any party's request that the Court grant relief, make a ruling, or take an action of any kind must be made in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11. If a party wishes to give the Court information, such information must be presented in the form of a notice. The Court will not consider requests made or information presented in

letter form.

5. Mr. Warner <u>shall not</u> make any motion for default until at least 70 days after the date of this Order.

6. Pursuant to Local 26.1(d) "no party may begin discovery until a scheduling order has been issued."

7. At all times during the pendency of this action, Mr. Warner must immediately advise the Court and opposing counsel of any change of address and its effective date. Failure to file a Notice of Change of Address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1. The following claims are barred by *Younger/Heck* and should be DISMISSED WITHOUT PREJUDICE AND SUBJECT TO REFILING should Mr. Warner succeed in overturning his criminal conviction:  Paragraphs 121 (conspiracy to wrongfully prosecute and convict); 122, 164 (conspiracy to violate privacy, effective assistance of counsel, due process); 123, 163 (conspiracy to violate right to compulsory process), 125 (freedom from false accusations and perjury); 126 (right to effective assistance of counsel); 128 (conspiracy to deprive Warner of right to free from false accusations, and police misconduct, and false

evidence, withheld evidence, perjury); 130, 141 (intentional misdiagnosis); 131,

167 (effective assistance, speedy trial); 135-136, 144, 150-151, 154, 188 (recording

of and listening to privileged phone calls); 139, 143, 166, 181, 189 (forced

evaluation); 147-148, 152, 156, 187 (disclosure of privileged information); 160

(deprivation of liberty without due process); 163, 165 (deprivation of right to

represent self and access to courts).

    2.  The following Defendants should be DISMISSED:  State of Montana,

Montana DPHHS, Flathead County, Eleventh Judicial District Court, Flathead

County Attorney, Kalispell Police Department, Flathead County Sheriff, Office of

the State Public Defender, Flathead County Detention Center, Forensic Mental

Health Facility, Flathead 911 Emergency Communications Center, Securus

Technologies, Inc., Travis Ahner, Robert Allison, William Managhan, Alison

Howard, Nick Aemisegger, Stan Ottosen, Jordan Miller, Jason Parce, Sean McRae,

Ronald Clacker, Jesse Allen, Dennis Peterson, and Charles Barlow.

    3.  Mr. Warner's ADA claims as alleged in Claim Three, Paragraph 138

should be DISMISSED.

    4.  Mr. Warner's HIPAA claims as alleged in Claim Five, Paragraphs 145-

146 should be DISMISSED.

    5.  Mr. Warner's claims regarding the November 21, 2017 search warrant for

his coat and shoes as alleged in Paragraphs 124, 155 of the Complaint should be DISMISSED.

6. Mr. Warner's claims regarding his lost backpack as alleged in Paragraphs 158 and 161 of the Complaint should be DISMISSED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[3]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.  This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 18th day of November, 2019.

Kathleen L. DeSoto
United States Magistrate Judge

---

[3]Mr. Warner is entitled to an additional three days after this period would otherwise expire.

41

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANNY LEE MR. WARNER, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA; MONTANA DPHHS; FLATHEAD COUNTY; Eleventh JUDICIAL DISTRICT COURT; FLATHEAD COUNTY ATTORNEY; KALISPELL POLICE DEPARTMENT; FLATHEAD COUNTY SHERIFF; OFFICE OF THE STATE PUBLIC DEFENDER; FLATHEAD COUNTY DETENTION CENTER; FORENSIC MENTAL HEALTH FACILITY; FLATHEAD 911 EMERGENCY COMMUNICATIONS CENTER; SECURUS TECHNOLOGIES, INC.; TRAVIS AHNER; ROBERT ALLISON; WILLIAM MANAGHAN; ALISON HOWARD; NICK AEMISEGGER; STAN OTTOSEN; JORDAN MILLER; JASON PARCE; SEAN McRAE; RONALD CLACKER; JESSE ALLEN; DENNIS PETERSON; CHARLES BARLOW; VIRGINIA HILL; JILL BUCK; and KRISTINA NEU,<br><br>Defendants. | CV 19-00103-M-DLC-KLD<br><br><br><br>RULE 4 NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF SUMMONS |

TO:   Dr. Virginia Hill
      Jill Buck
      Kristinia Neu
      Montana State Hospital
      300 Garnet Way
      Warm Springs, MT 59756

A lawsuit has been filed against you in this Court under the number shown

1

above.  A copy of the Complaint (Doc. 2) is attached.

This is not a summons or an official notice from the court.  It is a request that, to avoid the cost of service by the U.S. Marshals Service, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must file the signed waiver within 30 days from the date shown below, which is the date this notice was sent.

If you file the signed waiver, the action will then proceed as if you were served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent to answer the Complaint.  If you do not return the signed waiver within the time indicated, the Court will order the U.S.  Marshals Service to personally serve you with the summons and Complaint and may impose the full costs of such service.  Please read the statement below about the duty to avoid unnecessary expenses.

DATED this _18th_ day of November, 2019.

Kathleen L. DeSoto
United States Magistrate Judge

2

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANNY LEE MR. WARNER, JR., | CV 19-00103-M-DLC-KLD |
| Plaintiff, | |
| vs. | RULE 4 WAVIER OF SERVICE OF SUMMONS |
| STATE OF MONTANA; MONTANA DPHHS; FLATHEAD COUNTY; Eleventh JUDICIAL DISTRICT COURT; FLATHEAD COUNTY ATTORNEY; KALISPELL POLICE DEPARTMENT; FLATHEAD COUNTY SHERIFF; OFFICE OF THE STATE PUBLIC DEFENDER; FLATHEAD COUNTY DETENTION CENTER; FORENSIC MENTAL HEALTH FACILITY; FLATHEAD 911 EMERGENCY COMMUNICATIONS CENTER; SECURUS TECHNOLOGIES, INC.; TRAVIS AHNER; ROBERT ALLISON; WILLIAM MANAGHAN; ALISON HOWARD; NICK AEMISEGGER; STAN OTTOSEN; JORDAN MILLER; JASON PARCE; SEAN McRAE; RONALD CLACKER; JESSE ALLEN; DENNIS PETERSON; CHARLES BARLOW; VIRGINIA HILL; JILL BUCK; and KRISTINA NEU, | |
| Defendants. | |

TO:    The U.S.  District Court for the District of Montana

The following Defendants acknowledge receipt of your request to waive

service of summons in this case.  Defendants also received a copy of the Complaint

1

(Doc. 2). I am authorized by the following Defendants to agree to save the cost of service of a summons and an additional copy of the Complaint in this action by not requiring that the following individuals be served with judicial process in the case provided by Fed.R.Civ.P. 4:

_____;   _____;

_____;   _____;

The above-named Defendants understand that they will keep all defenses or objections to the lawsuit, the Court's jurisdiction, and the venue of the action, but waive any objections to the absence of a summons or of service. Defendants also understand that they must file and serve an answer or a motion under Rule 12 within 60 days from the date when the Request for Waiver of Service of Summons was filed and if they fail to so default judgment will be entered against them.

Date: _____

_____
(Signature of the attorney
or unrepresented party)

_____
(Printed name)

2

_____
(Address)


_____
(E-mail address)


_____
(Telephone number)

3