IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED

MAR 24 2020

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| DANNY LEE WARNER, JR., | CV 19–103–M–DLC–KLD |
| Plaintiff, | |
| vs. | |
| STATE OF MONTANA; MONTANA DPHHS; FLATHEAD COUNTY, ELEVENTH JUDICIAL DISTRICT COURT; FLATHEAD COUNTY ATTORNEY; KALISPELL POLICE DEPARTMENT; FLATHEAD COUNTY SHERIFF; OFFICE OF THE STATE PUBLIC DEFENDER; FLATHEAD COUNTY DETENTION CENTER; FORENSIC MENTAL HEALTH FACILITY; FLATHEAD 911 EMERGENCY COMMUNICATIONS CENTER; SECURUS TECHNOLOGIES, INC.; TRAVIS AHNER; ROBERT ALLISON; WILLIAM MANAGHAN; ALISON HOWARD; NICK AEMISEGGER; STAN OTTOSEN; JORDAN MILLER; JASON PARCE; SEAN McRAE; RONALD CLACKER; JESSE ALLEN; DENNIS PETERSON; CHARLES BARLOW; VIRGINIA HILL; JILL BUCK; and KRISTINA NEU, | ORDER |
| Defendants. | |

## INTRODUCTION

This matter comes before the Court on the Findings and Recommendations ("F&R") entered by United States Magistrate Judge Kathleen L. DeSoto (Doc. 9) regarding the Plaintiff Danny Lee Warner, Jr.'s Complaint (Doc. 2). Warner alleges various civil rights violations related to his incarceration at the Flathead County Detention Center and the Forensic Mental Health Facility ("FMHF") of the Montana State Hospital in 2016 and 2017.

Because Warner is a prisoner, his case was referred to Magistrate Judge DeSoto. *See* D. Mont. L.R. 72.2(a)(1). Judge DeSoto conducted the screening required under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B), and she filed the F&R on November 18, 2019. (Doc. 9.) Apart from Defendants Hill, Buck, and Neu, Judge DeSoto recommends that the Court dismiss all claims and Defendants. (*Id.* at 2.) Warner timely filed objections to the F&R on December 2, 2019. (Doc. 11.) For the following reasons, the Court adopts the F&R in full.

## DISCUSSION

### I. Standard of Review

Under the Federal Magistrates Act, Warner is entitled to de novo review of those findings to which he specifically objects. 28 U.S.C. § 636(b)(1)(C). Absent objection, the Court reviews a magistrate judge's findings and recommendations for clear error. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)

(en banc); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error is "significantly deferential" and exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

Pursuant to its screening obligations under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B), the Court must dismiss a complaint in which a prisoner seeks redress from governmental defendants if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." Reviewing a complaint under §§ 1915A(b) and 1915(e)(2)(B), the Court "employ[s] the same standard used to test the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6)." *Lucas v. Jovanovich*, No. CV 15–76–H–DLC–JTJ, 2016 WL 3267332, at *2 (D. Mont. June 10, 2016) (citing, *inter alia*, *Lopez v. Smith*, 203 F.3d 1122, 1126 n. 7 (9th Cir. 2000) (en banc)).

Accordingly, to survive dismissal at this stage, with the Court accepting all its factual allegations as true, Warner's Complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint fails to meet this standard "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (citation and internal quotation marks omitted). That is, if a complaint pleads facts that are "merely consistent with" a

defendant's liability, it "stops short of the line between possibility and plausibility." *Id.* (citation omitted).

The Court reviews the Complaint here aware of Warner's *pro se* status and understanding that "a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted).

## II. Factual Allegations

The factual allegations in this case are adequately set forth in the F&R and will not be restated here, except to address an objection Warner lodges to a specific point in Judge DeSoto's summary. (Doc. 9 at 3–10.) Warner argues that Judge DeSoto committed clear error by "misstating the facts of [his] backpack being left in the bar by Defendants [Parce, Clacker, Allen, and Peterson]" after they arrested him. (Doc. 11 at 1.) However, in support of his contention that the F&R makes an "objectively unreasonable" misstatement of fact, Warner cites a federal habeas standard of review—a standard which is inapposite to his claims here. (*Id.*)

Furthermore, the Court finds that the distinction between the facts alleged in the Complaint and the F&R's of characterization the same support Judge DeSoto's ultimate conclusion that Warner "does not plausibly state a Fourth Amendment claim in that he alleges his backpack was left at the bar and not actually seized by

Defendants." (Doc. 9 at 34.) Warner alleges that, at the time of his arrest, he "had a black backpack with him that disappeared after he was escorted from the bar[.]" (Doc. 2 at 18.) He goes on to assert that he "can prove these Defendants [Parce, Clacker, Allen, and Peterson] left with [the] backpack but he does not know what happened to it after that." (*Id.*) For its part, the F&R states that "at the time [of Warner's arrest, he] had a backpack that disappeared after he was escorted from the bar . . . and Defendants left the backpack in the bar after they arrested Mr. Warner." (Doc. 9 at 10, 34.)

While the Court may not have assumed, as Judge DeSoto did, that the backpack disappeared because the Defendants left it at the bar, it nevertheless finds Warner's dispute over Judge DeSoto's characterization of events irrelevant. That is, the Court fails to see how Warner's bald speculation that the Defendants left with his missing backpack, devoid of factual enhancement, meets the plausibility standard for pleading. By guessing at the fate of his vanished backpack, Warner pleads facts that are merely consistent with the officers' Fourth Amendment liability—a pleading strategy that stops short of the line between possibility and plausibility.

Accordingly, reviewing the Complaint de novo, the Court concludes that Warner's naked assertion that he can prove that Defendants "left" with the missing backpack, coupled with his conclusion that "he does not know what happened after

that," fails meet the plausibility standard for pleadings. Therefore, the Court finds Warner's specific objection to Judge DeSoto's factual summary as it relates to the backpack irrelevant insofar as it does not affect the Court's ultimate adoption of her recommendation to dismiss his Fourth Amendment claim against Defendants Parce, Clacker, Allen, and Peterson.

### III. Objections

Warner largely does not lodge specific objections to the F&R. To that extent, the Court has reviewed Judge DeSoto's analysis and recommendations for clear error and finds none; her analysis is thorough and well-reasoned. Where Warner has specifically objected, the Court has reviewed the Complaint and the F&R de novo. While Warner does not enumerate his specific objections to the F&R, the Court organizes them into five categories for clarity.

First, Warner argues that the F&R unreasonably misstates his factual allegations as they relate to the backpack—an objection which the Court has already addressed. Second, Warner contends that the F&R amounts to an erroneous "declaration that [he] has absolutely no constitutional rights whatsoever," based on the Magistrate Judge's purported overreading of the *Younger* and *Heck* doctrines. (Doc. 11 at 2–5.) Third, Warner objects that the F&R improperly "hand[s] out immunity like candy at Halloween" to individual and entity defendants. (*Id.* at 5–6.) Specifically, Warner objects to Judge

DeSoto's immunity determinations regarding the following Defendants: (1) non-municipal entities in Kalispell (Kalispell Police Department, Flathead County Detention Center, and Flathead 911 Emergency Communications Center); (2) Travis Ahner; and (3) criminal defense attorneys (William Managhan and Nick Aemisegger). (*Id.* at 5–6.) Fourth, he objects to the F&R's finding that the Complaint fails to plausibly allege a disability under the Americans with Disabilities Act ("ADA"). (Doc. 11 at 6.) Fifth, Warner objects to the F&R's "complete lack of any analysis regarding [Defendant] Securus Technologies, Inc." (Doc. 11 at 7.)

As noted, the Court begins with Warner's second objection as it has already disposed of his dispute with Judge DeSoto's factual summary relating to the backpack.

A. **Objection:** *Younger* **and** *Heck*

1. *Younger* **Doctrine**

"Since the beginning of this country's history Congress has, subject to a few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971). To that end, the *Younger* doctrine "generally directs federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *Martinez v. Newport Beach City*, 125 F.3d 777, 781 (9th

Cir. 1997) (citing *Younger*, 401 U.S. at 40–41). *Younger* abstention applies to a § 1983 cause of action for money damages when the pending state proceedings are criminal in nature. *Id.* at 781 n.5 (citing *Mann v. Jett*, 781 F.2d 1448 (9th Cir. 1986) (per curiam)).

Nevertheless, the *Younger* doctrine remains "an extraordinary and narrow exception to the general rule that federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018) (citation omitted). Cabining *Younger*, the Ninth Circuit has developed a five-prong test to determine when the doctrine should apply to a civil case. *Id.* "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Id.* (citation omitted). Then, if the first four prongs are satisfied, the court considers the fifth prong: "whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id.* at 924–25.

Applying the five-prong test here, Judge DeSoto recommends that the Court abstain from rendering a decision on the federal constitutional claims that Warner has raised in his state court appeal. (Doc. 9 at 15–18.) Warner only disputes Judge

DeSoto's analysis under the first prong. (Doc. 11 at 4.) Based on his conviction in the state trial court, Warner contends that his prosecution is no longer ongoing. (*Id.*)

State court proceedings remain "pending" for purposes of the *Younger* doctrine until the losing party exhausts all state appellate remedies. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975). Application of *Younger* through the appellate process advances the doctrine's roots in federalism, because "[f]ederal post-trial intervention, in a fashion designed to annul the results of a state trial . . . deprives the States of a function which quite legitimately is left to them[.]" *Wooley v. Maynard*, 430 U.S. 705, 711 (1977) (quoting *Huffman*, 420 U.S. at 609).

Warner's appeal from the robbery conviction—the underlying facts of which support his instant claims—is pending before the Montana Supreme Court. *State v. D. Warner, Jr.*, DA 18-0046 (filed Jan. 22, 2018). So, for *Younger*'s purposes, an ongoing prosecution exists, and as such, federal post-trial intervention would deprive the Montana Supreme Court of a function legitimately left to it. Therefore, reviewing Judge DeSoto's analysis de novo, the Court agrees that the first prong of the *Younger* test is satisfied. Because Warner does not object to the remainder of Judge DeSoto's analysis, the Court reviews for clear error and finds none.

Warner separately argues that *Younger* does not apply because he was a pretrial detainee at the time his § 1983 claims arose, not a convicted prisoner.

(Doc. 11 at 3.) He cites no authority to support his proposition that a "firm distinction" exists between convicted offenders and pretrial detainees to warrant departure from this Circuit's *Younger* jurisprudence. Indeed, the Ninth Circuit has applied *Younger* in at least one case where the alleged constitutional violation arose following indictment but before conviction. *See Mann*, 781 F.2d at 1449 (applying *Younger* abstention where §1983 claim arose from delay in appointing counsel after indictment was issued). Accordingly, the Court finds Warner's argument on this point unpersuasive. Likewise, the Court rejects Warner's unsupported assertion that the *Younger* doctrine "do[es] not apply at all to § 1985(3)" claims (Doc. 11 at 5). *E.g., Brandy Found. Animal Sanctuary v. San Bernadino Cty.*, No. CV 08-02292 DDP, 2009 WL 10698907, at *6–7 (C.D. Cal. Jan. 26, 2009).

Accordingly, reviewing Warner's objections related Judge DeSoto's application of the *Younger* doctrine de novo, the Court adopts this portion of the F&R in full.

### 2. *Heck* Doctrine

Judge DeSoto determined that, even if *Younger* does not bar the majority of Warner's claims, they are barred by the *Heck* doctrine, unless and until he succeeds on his appeal to Montana Supreme Court. The Court agrees. "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other*

*harm caused by actions whose unlawfulness would render a conviction or sentence invalid*," a § 1983 plaintiff must prove that his conviction has been invalidated or reversed. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (emphasis added). Therefore, a damage claim "bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487 (emphasis in original).

Under to *Heck*, Judge DeSoto recommends that Warner's claims—to the extent they are not barred by *Younger*—should be dismissed, as they bear on the validity of his robbery conviction. (Doc. 9 at 19.) First, Warner argues that *Heck* does not apply "at all" to his § 1985(3) claims. (Doc. 11 at 5.) However, the principle established in *Heck* is not so limited. *Amaker v. Weiner*, 179 F.3d 48, 51–52 (2d Cir. 1999) (collecting cases). Warner's conspiracy claims plainly call into question the validity of his robbery conviction; therefore, *Heck* applies not only to his § 1983 claims but also to his § 1985(3) claims.

Next, Warner baldly asserts that his privacy claims will *not* demonstrate the invalidity of his conviction, and therefore they are excludable from the sweep of *Heck*'s general rule. (Doc. 11 at 4 (citing *Heck*, 512 U.S. at 487).) Though he cites *Heck*'s exception, Warner fails to explain how it applies here. (Doc. 11 at 4.) For example, he does not argue that success on his illegal recording claims would leave the validity of his conviction intact under, say, the harmless error doctrine.

*See Heck*, 512 U.S. at 487 n.7 (explaining that "a suit for damages attributable to an allegedly unreasonable search may lie . . . [b]ecause of doctrines like independent source and inevitable discovery . . . and especially harmless error").

Accordingly, reviewing de novo, the Court adopts in full the F&R's analysis and conclusion as it relates to the applicability of the *Heck* doctrine. And, because *Heck* acts to bar Warner's claims to any extent that *Younger* does not, the Court agrees that the appropriate disposition here is dismissal without prejudice. (*See* Doc. 9 at 18.) If Warner is successful on his pending appeal to the Montana Supreme Court, he may refile these claims.

## B. Objection: Immunity

### 1. Non-Municipal Entities in Kalispell

Montana law provides that a municipality, not the particular departments within it, has the power to sue and be sued. *E.g.,* Mont. Code Ann. § 7–1–4124(2). Therefore, Judge DeSoto recommends dismissal of the department Defendants: Kalispell Police Department, Flathead County Detention Center, and Flathead 911 Emergency Communications Center.

Warner objects, stating that Montana subjects "every governmental entity" to suit, and included in the definition of "governmental entity" are "political subdivisions such as detention centers [and] police departments." (Doc. 11 at 6.) However, Warner overreads the relevant statute by inserting detention centers and

police departments into the definition of "political subdivision," which "means any county, city, or municipal corporation, school district, special improvement or taxing district." Mont. Code Ann. § 2–9–101. The Court declines Warner's invitation to expand Montana's statutory definition, or alternatively, to redraft his Complaint.

Accordingly, reviewing de novo, the Court agrees with Judge DeSoto that Defendants Kalispell Police Department, Flathead County Detention Center, and Flathead County 911 Emergency Communications Center are not entities subject to suit. Therefore, they are dismissed.

### 2. Travis Ahner

As a general matter, prosecutorial immunity is absolute and sweeping. State prosecutors are immune when "'initiating a prosecution' and 'presenting the State's case,' and during 'professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . . after a decision to seek indictment has been made.'" *Gormon v. Cty. of Los Angeles*, 828 F.3d 837, 843 (9th Cir. 2016) (internal citations omitted). Still, a prosecutor is not entitled to immunity when he "is not acting as an officer of the court, but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (citation and quotation marks omitted).

Here, Judge DeSoto determined that Defendants Ahner and Howard, Deputy County Attorneys for Flathead County, are entitled to absolute immunity for their performance of traditional advocacy functions, and Warner does not object. (Doc. 9 at 24.) Instead, he argues that the F&R erroneously applied immunity to Ahner where his alleged misconduct—conspiracy to illegally seize property by way of a warrant—took place outside his prosecutorial functions. (Doc. 11 at 5.)

Judge DeSoto acknowledged that Ahner's alleged actions in seeking the warrant, which was signed the same day Warner was sentenced, arguably are not covered by immunity. However, her recommended dismissal of Ahner on this allegation was not based on immunity, but rather Warner's failure to state a claim regarding the warrant. (Doc. 9 at 26.) Accordingly, reviewing de novo, the Court finds no conflict between Judge DeSoto's determination and Warner's objection.

### 3. Public Defenders

"[A] public defender representing a client in the lawyer's traditional adversarial role [is] not a state actor" within the meaning of § 1983. *Miranda v. Clark Cty., Nev.*, 319 F.3d 465, 468 (9th Cir. 2003) (en banc). However, "an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover*, 467 U.S. 914, 920 (1984) (citing *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)).

Warner does not object to Judge DeSoto's determination that, as a general matter, a § 1983 allegation against public defenders fails to state a claim. (Doc. 9 at 27.) Instead, he points to *Tower* to argue that Defendants Aemisegger and Managhan are excepted from the general rule, because they "entered conspiracy (sic) with the judge or prosecutor." (Doc. 11 at 6.)

Looking to the Complaint, however, the Court finds that Warner alleges a conspiracy between his public defenders—not between the attorneys and government actors—to deprive him of his constitutional rights. (Doc. 2 at 18, ¶ 109.) Therefore, reviewing de novo, the Court agrees with Judge DeSoto's determination that Warner fails to state a claim against Defendants Aemissegger and Managhan, as they are not state actors.

### C. ADA Claim

A plaintiff must allege, *inter alia*, that he "is an individual with a disability" to state a claim under the ADA. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004). Judge DeSoto found that Warner's conclusory statement that he "is a person with a disability as defined by the [ADA]" fails to meet the plausibility standard under Rule 8. (Doc. 9 at 31.) Warner objects, arguing that the Court must treat his bare assertions of liability, devoid of factual enhancement, as meeting the plausibility standard for pleading. (Doc. 11 at 6–7.)

Mirroring its explanation set out in Section II, *supra*, the Court disagrees with Warner's position that anything he states in his Complaint, even without factual enhancement, must be accepted as truth in fact. Reviewing de novo, the Court agrees with Judge DeSoto that Warner's conclusory assertion fails to state a plausible ADA claim.

### D. Securus Technologies, Inc.

Finally, Warner objects to the F&R's "complete lack of any analysis regarding Securus Technologies, Inc." (Doc. 11 at 7.) He argues that "the Magistrate seemingly recommends dismissal of these claims arbitrarily, without reviewing them at all, which is clear error." (*Id.*) Specifically, Warner asserts that Judge DeSoto failed to analyze the claims set out in Paragraphs 135, 144, 150, and 180 of the Complaint. (*Id.*)

However, Judge DeSoto indeed analyzed his claims against Securus Technologies, Inc. in the context of the *Younger* and *Heck* doctrines. (*See* Doc. 9 at 40.) And, as previously discussed, the Court adopts the F&R's recommendations under those paradigms.

### ORDER

Reviewing de novo where Warner specifically objects and for clear error where he does not, IT IS ORDERED that Judge DeSoto's F&R (Doc. 9) is ADOPTED IN FULL.

Accordingly, IT IS FURTHER ORDERED THAT:

(1) The following claims are barred by *Younger/Heck* and are DISMISSED WITHOUT PREJUDICE, SUBJECT TO REFILING should Warner succeed in overturning his robbery conviction: Paragraphs 121 (conspiracy to wrongfully prosecute and convict); 122, 164 (conspiracy to violate privacy, effective assistance of counsel, due process); 123, 163 (conspiracy to violate right to compulsory process); 125 (freedom from false accusations and perjury); 126 (right to effective assistance of counsel); 128 (conspiracy to deprive Warner to be free from false accusations, and police misconduct, and false evidence, withheld evidence, perjury); 130, 141 (intentional misdiagnosis); 131, 167 (effective assistance, speedy trial); 135–35, 144, 150–51, 154, 188 (recording of and listening to privileged phone calls); 139, 143, 166, 181, 189 (forced evaluation); 147–48, 152, 156, 187 (disclosure of privileged information); 160 (deprivation of liberty without due process); 163, 165 (deprivation of right to represent self and access to courts);

(2) The following Defendants are DISMISSED: State of Montana, Montana DPHHS, Flathead County, Eleventh Judicial District Court, Flathead County Attorney, Kalispell Police Department, Flathead County Sherriff, Office of the State Public Defender, Flathead County Detention Center, Forensic Mental Health Facility, Flathead 911 Emergency Communications Center, Securus

Technologies, Inc., Travis Ahner, Robert Allison, William Managhan, Alison Howard, Nick Aemisegger, Stan Ottosen, Jordan Miller, Jason Parce, Sean McRae, Ronald Clacker, Jesse Allen, Dennis Peterson, and Charles Barlow.

(3) The ADA claim, as alleged in Claim Three, Paragraph 138 is DISMISSED;

(4) The Health Insurance Portability and Accountability Act claim, as alleged in Claim Five, Paragraphs 145–46 are DISMISSED;

(5) The claims regarding the November 21, 2017 search warrant for Warner's coat and shoes as alleged in Paragraphs 124, 155 of the Complaint are DISMISSED;

(6) The claims regarding the Warner's lost backpack as alleged in Paragraphs 158 and 161 are DISMISSED.

Dated this 24th day of March, 2020.

*Dana L. Christensen*
Dana L. Christensen
United States District Court